IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| MARK A. MATHEWS,<br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | Case No. 4:14-CV-04031 |

## Order and Opinion

The Plaintiff, Mark Mathews, filed his application for disability insurance and Supplemental Security Income benefits on September 12, 2011, alleging that he became disabled on August 19, 2011. At each stage of the review process, his claim for benefits was denied. Having exhausted all of his administrative remedies, he now asks this Court to reverse the Defendant Commissioner's denial of his claim for benefits. For the reasons set forth herein, this Court reverses the Commissioner's denial of benefits, and therefore GRANTS the Plaintiff's Motion for Summary Judgment (D. 13) and DENIES the Defendant's Motion for Summary Affirmance (D. 16).[1]

### I
### A

The issue before the Court is whether the ALJ erred when she failed to order a consultative examination related to the Plaintiff's impairment of his left hand, wrist, and forearm (referred collectively herein as Mathews's "arm") and, in light of that alleged failure, whether the ALJ's RFC and conclusion that the Plaintiff is not disabled is supported by substantial evidence. Because the inquiry before the Court

---

[1] Both the Plaintiff and the Defendant consented to a U.S. Magistrate Judge deciding this case on the merits. (D. 8; D. 9).

is solely related to the arm impairment, the Court will not discuss medical evidence related to other impairments, except where necessary for completeness's sake. Although there is a great deal of medical evidence in the record concerning Mathews's *other* impairments, there is very little concerning his arm impairment. Whether there was still enough in this record for the ALJ to properly determine Mathews's RFC is the central question before the Court.

Mathews's problems with his arm began on August 17, 2011, when his girlfriend stabbed him with a butcher knife in his left forearm (his dominant one), resulting in extensive tendon injury. His hospital intake record notes:

> Of the left posterior forearm and the extensor compartment is a laceration of 6 cm that violates the muscles and tendons. He does have range of motion in both the extensor and flexor motions although this is painful and his extensor range is somewhat limited. There is numbness and tingling to the last 3 digits of the left upper extremity although grip strength is intact.

(D. 11-1 at ECF p. 153). His girlfriend also stabbed him in the chest with a pair of scissors several times, but he claims no impairment due to these injuries.

He underwent surgery the next day to repair the damage, but he re-injured his hand later in the month while picking up a pair of jeans. Upon reexamination, he showed decreased range of motion of the fingers and left hand, precipitating another surgery to again repair his injuries.

Mathews's orthopedic surgeon, Dr. Aric Eckhardt, produced a record one month later, on September 28, 2011, which indicated that Mathews had one out of five (1/5) muscle strength in his fingers, hands, wrist, and forearm of the left upper extremity, and forearm atrophy. He concluded that Mathews would have severe difficulty performing all tested manipulative abilities with his left hand. (D. 11-2 at ECF p. 18-22).

On December 9, 2011, agency physician, Dr. Francis Vincent, completed a "Physical Residual Functional Capacity Assessment." It does not appear as if Dr.

Vincent examined Mathews, but rather reviewed the medical evidence, including Dr. Eckhardt's report. He noted the findings made by Dr. Eckhardt. He also found that Mathews's statements were considered credible as consistent with medical evidence in the record, which indicated limitations with fine manipulation and grip in his left hand. (D. 11-2 at ECF p. 97). He concluded that Mathews was "[l]imited to occasional" reaching, handling, fingering, and feeling with the left hand. (D. 11-2 at ECF p. 93).

The medical record is silent regarding Mathews left arm impairment for over a year and a half until, in July of 2013, he was examined by Dr. Hassan Haji Abdiraham. Dr. Abdiraham noted that Mathews stated he sustained injuries to his hand from a butcher knife, and "[a]pparently he had surgery on this left hand on August 17, 2011 then a revision surgery 3 weeks after." (D. 11-3 at ECF p. 38). He went on to note:

> He states he is fighting disability case and would like to be referred to orthopedics. He says he has some pain in the hand and weakness in strength. Denies paresthesia. Surprisingly he has not seen anyone since 8/2011 when he had his surgery.

(D. 11-3 at ECF p. 39). Regarding Dr. Vincent's own examination, in contrast to his report of what Mathews told him, the sum total of his findings with regard Mathews's musculoskeletal findings were: "Comments: he has scar on left forearm. he has good grips bilat. full distal pulses bilat. no gross sensory loss. no deformity seen" (bad grammar in original). (D. 11-3 at ECF p. 40). Although Mathews requested a referral to an orthopedist, he was never seen by one; nor was a consultative examination ever ordered.

Although there is a great deal of medical evidence regarding Mathews's other impairments, the evidence discussed above is the entirety of the medical evidence related to his left arm impairment.

**B**

The ALJ, when assessing Mathews's RFC related to his left arm, had this evidence before her. She concluded that Mathews cannot climb ladders, ropes, or scaffolding and "can frequently, but not constantly, reach, handle, finger, and feel with the dominant left upper extremity." (D. 11 at ECF p. 27). This conclusion differed from the only medical opinion in the record by Dr. Vincent, who concluded that Mathews was limited to these activities "occasionally."

In reaching this conclusion, the ALJ gave Dr. Eckhardt's report "little weight" because "there is no indication that Mathew's limitations noted by Dr. Eckhardt persisted for at least a year following the claimant's onset date." (D. 11 at ECF pp. 29-30). For the same reason, she gave Dr. Vincent's finding "little weight." Id. Later, she said she flat out "rejected" both of these sources. Id. Her reasons for doing so were based upon a sprinkling of statements Mathews made to various treatment providers for unrelated mental issues over the preceding years. For example, in November of 2011 he said that he had to avoid "strenuous" activity; in January of 2012 he reported moderate interference with daily activities due to left hand pain; in November of 2012 he denied any pain that restricted activity; and he sought no treatment for his left upper extremity until July of 2013 when he saw Dr. Abdiraham who noted that Mathews was "fighting a disability case." Given her rejection of both Dr. Eckhardt and Dr. Vincent's opinions, the only medical record the ALJ was left with was that of Dr. Abdiraham, which, as already noted, consisted of a notation that Mathews had a scar on his left forearm, "good grips," no "gross" sensory loss, no deformity, and a pulse. From this information, then, she necessarily formulated her RFC as it related to Mathew's arm.

## II

Before this Court, Mathews argues that the ALJ erred in failing to develop the medical record and, consequently, erred in concluding that Mathews could use his arm "frequently," as that conclusion was not supported by substantial evidence. Noting the paucity of evidence in the record, Mathews argues that the ALJ, at a

4

minimum, should have ordered a consultative examination to assist her in evaluating Mathews's arm impairment. By relying solely upon the report produced by Dr. Abdiraham, which contained no opinion about Mathews's limitations and very little in the way of objective information regarding his arm impairment, the ALJ "played doctor" by interpreting the meager findings in Dr. Abdiraham's report to conclude that Mathews could reach, handle, finger, and feel with the dominant left upper extremity.

The Commissioner responds that the ALJ had enough information in the record to support her conclusion. Specifically, her RFC was supported by Mathews's own statements, his failure to seek any treatment for left hand pain after September 2011, his lack of complaints in other medical treatment notes, and the normal clinical examination results.

## III
### A

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. See *Schmidt v Apfel*, 201 F3d 970, 972 (7th Cir 2000); *Pugh v Bowen*, 870 F2d 1271 (7th Cir 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 USC § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v Barnhart*, 297 F3d 589, 593 (7th Cir 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v Bowen*, 782 F2d 79, 82 (7th Cir 1986).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v Perales*, 402 US 389, 390 (1971), *Henderson v Apfel*, 179 F3d 507, 512 (7th Cir 1999). Furthermore, determinations of credibility made by the ALJ will not be overturned unless the

findings are clearly erroneous. *Anderson v Bessemer City*, 470 US 564, 573 (1985); *Imani v Heckler*, 797 F2d 508 (7th Cir 1986), cert denied, 479 US 988 580 (1986).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. See 20 CFR " 404.1566, 416.966 (1986). The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 USC ' 1382(c)(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v Califano*, 614 F2d 142, 143 (7th Cir 1980). The factual determination is made by using a five-step test. See 20 CFR " 404.1520, 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix[2] and which meets the duration requirement;

4) is unable to perform her past relevant work; and

---

[2] Should the claimant not qualify under one of Step Three's listed impairments, the ALJ then proceeds to Step Four to determine the claimant's Residual Functional Capacity. Pursuant to the claimant's RFC, the ALJ determines under Steps Four and Five whether she is capable of performing past work or other work available in the national economy. 20 CFR § 404.1520(e)-(g).

5) is unable to perform any other work existing in significant numbers in the national economy.

Id. An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v Schweiker*, 732 F2d 605 (7th Cir 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v Heckler*, 779 F2d 1250 (7th Cir 1985); *Halvorsen v Heckler*, 743 F2d 1221 (7th Cir 1984).

Here, Mathews challenges the ALJ's determination at Step Five, in that her RFC determination is unsupported by substantial evidence, such that her conclusion that Mathews is able to perform work in the national economy is erroneous. The Court will accordingly limit its discussion to the issue raised.

**B**

"While a claimant bears the burden of proving disability, the ALJ in a Social Security hearing has a duty to develop a full and fair record." *Nelms v Astrue*, 553 F3d 1093, 1098 (7th Cir 2009), citing *Smith v Apfel,* 231 F3d 433, 437 (7th Cir 2000); *Thompson v Sullivan,* 933 F2d 581, 585 (7th Cir 1991). This record development can include ordering examinations and contacting treating physicians and medical sources to request additional records and information. Id, citing 20 CFR §§ 416.912(d)-(f), 416.919, 416.927(c)(3). Reviewing courts generally uphold the reasoned judgment of the Commissioner on how much evidence to gather. *Nelms*, 553 F3d at 1098. Although an ALJ has a heightened duty when a claimant is unrepresented by counsel, the Claimant here was represented in the proceedings below, as well as before this Court. See *Thompson v Sullivan,* 933 F2d 581, 586 (7th Cir 1991).

The Commissioner's regulations, 20 CFR § 404.1512(d), also provide that before determining that a claimant is not disabled, she has the responsibility to develop the claimant's "complete medical history," defined as records of the claimant's medical sources covering at least the 12 months preceding the month in which the claimant's application is filed. The Commissioner will try to obtain additional evidence if the evidence before her is insufficient to determine whether a claimant is disabled or, if after weighing the conflicting evidence, she cannot reach a conclusion. 20 CFR § 404.1527(c)(3). In that situation, she will either request additional existing records, recontact claimant's treating sources or any other examining sources, or ask the claimant for more information or to undergo a consultative examination. Id; 20 CFR § 404.1512(e); *Luna v Shalala,* 22 F3d 687, 693 (7th Cir 1994).

Although an ALJ may seek a consultative medical exam, courts are generally hesitant to find that an ALJ failed in her duty to develop the record on the mere fact that an ALJ failed to receive "one last report." See *Luna v Massanari,* 2001 WL 987860,

*6 (SD Ind), citing *Luna v Shalala,* 22 F3d 687, 692 (7th Cir 1994). "One may always obtain another medical examination, seek the views of one more consultant, wait six months to see whether the claimant's condition changes, and so on." *Luna,* 22 F3d at 692, quoting *Kendrick v Shalala,* 998 F2d 455, 456-57 (7th Cir 1993). On the other hand, an ALJ must have sufficient evidence in the record before declining to exercise her discretion to not obtain an additional consultative exam. *Massanari,* at *6. Thus, the prerequisite for deferring to the ALJ's discretionary decision not to order a consultative exam is that "sufficient evidence" already exist in the record. Because the existing evidence in this record is woefully insufficient, the ALJ erred in failing to obtain a consultative examination.

The medical records related to Mathews's arm impairment consisted of his initial hospital records related to his injury, the report of his orthopedist, Dr. Eckhardt, the report of agency physician Dr. Vincent, and the report of examining physician Dr. Abdiraham. The ALJ rejected the opinions of Dr. Eckhardt and Dr. Vincent, leaving her only with the report of Dr. Abdiraham.

Dr. Abdiraham's report, however, did not provide enough information for the ALJ to make an informed decision about Mathews's arm impairment. Dr. Abdiraham's notations that Mathews had a scar on his left forearm, "good grips," no "gross" sensory loss, no deformity, and a pulse provides almost no useful information regarding any functional limitations Mathews may have. For example, what does it mean to say Mathews had "good grips"? Even when Mathews showed up in the emergency room with a lacerated forearm and tendons, the intake notes showed his grip was "intact," this despite the severe limitations noted by Dr. Eckhardt. Does a lack of "gross" sensory loss and deformity imply anything about Mathews's ability to perform activities "frequently," as opposed to "occasionally"? No. The same is true for him having a "pulse" in both wrists; presumably, people in comas have a pulse in their wrists as well, but they cannot perform tasks at all, let alone "frequently" or "occasionally." In other words, Dr. Abdiraham's examination

is practically useless for determining the extent of Mathews's limitations, yet this is the only medical record the ALJ relied upon in formulating the RFC as it relates to Mathews's arm.

The other medical evidence in the record, rejected by the ALJ, all supported at least a finding consistent with Dr. Vincent's. All this information uniformly consisted of a finding that Mr. Mathews's ability to reach, handle, finger, and feel with the dominant left upper extremity was at least limited to "occasionally" performing such activities. Not a single medical record supported a conclusion of "frequent" performance of these activities; this conclusion was something the ALJ formulated herself based on Dr. Abdiraham's report, already noted as being of almost no use in evaluating the extent of Mathews's impairment.

Undeniably, Mr. Mathews did make a few statements over the course of many months to medical providers which hinted that he might be less impaired than Dr. Eckhardt and Dr. Vincent indicated. However, the ALJ cannot "cherry pick" these statements in a vacuum to formulate an RFC without any support in the objective medical record. The Plaintiff's statements relied upon by the ALJ were made in the course of numerous visits to medical professionals for serious mental health issues. Included among the issues precipitating these visits were psychotic episodes, hallucinations, and suicidal ideation. It is unlikely that, given the reasons for his numerous visits to the emergency room and other medical professionals for these mental health issues, Mathews or the medical professionals were concerned about anything but his mental issues. Likewise, the reliability of Mathews's statements in this context is questionable, given the mental state he was in when he made them. Of course, the ALJ may consider all of the Plaintiff's statements in formulating the RFC, but she must also have a sufficiently developed medical record when doing so.

In sum, the ALJ should have, at a minimum, ordered a consultative medical examination to assess the extent of Mathews's impairment and his functional

limitations. Her failure to do so deprived her of sufficient medical information to formulate an RFC as it related to Mathews's arm impairment, as well as how that arm impairment in combination with his other impairments affected his ability to work. Therefore, a remand is necessary so that the ALJ can at least obtain a consultative medical examination, if not more, and reformulate Mathews's RFC. She should then reevaluate the proceeding steps in the process, should her RFC determination change in light of the new medical evidence.

## IV

In light of the foregoing, this Court reverses the Commissioner's denial of benefits, remands under Sentence Four of the Social Security Act, 42 USC § 405(g), with instructions that the Commissioner evaluate the Plaintiff's RFC in light of a consultative examination regarding the impairment of his left arm and, if necessary, reevaluate the subsequent steps in the process in light of any change in the RFC. Accordingly, this Court GRANTS the Plaintiff's Motion for Summary Judgment (D. 13) and DENIES the Defendant's Motion for Summary Affirmance (D. 16).

In light of the parties' consent, any appeal of this ruling must be made directly to the Seventh Circuit within the time period prescribed by the Federal Rules of Appellate Procedure.

Dated: March 18, 2015

                                                      s/Jonathan E. Hawley
                                                      U.S. Magistrate Judge